FILED
09/27/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 13, 2022

## STATE OF TENNESSEE v. KEVIN D. STODGHILL

**Appeal from the Criminal Court for Davidson County**
**No. 2019-A-644      Monte Watkins, Judge**

_____

### No. M2021-01502-CCA-R3-CD

_____

The defendant, Kevin D. Stodghill, appeals the trial court's imposition of a fully incarcerative sentence for his guilty-pleaded convictions of aggravated assault and aggravated burglary. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined. JOHN EVERETT WILLIAMS, P.J., Not Participating.[1]

Jeffrey A. DeVasher (on appeal) and Crandall Story (at trial), Assistant District Public Defenders, for the appellant, Kevin D. Stodghill.

Herbert H. Slatery III, Attorney General and Reporter; Kayleigh Butterfield, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Ross M. Boudreaux, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Davidson County Grand Jury charged the defendant with the December 10, 2018 aggravated assault of victim Ollie Petre, aggravated burglary of Mr. Petre's residence, theft of Mr. Petre's property valued at $2,500 or more but less than $10,000, and vandalism of Mr. Petre's property valued at $1,000 or less. The grand jury also charged the defendant with the December 10, 2018 aggravated burglary of the residence of victims Rachel and Jeremy Anderson and theft of the couple's property valued at more than $1,000 but less than $2,500. On August 20, 2021, the defendant, a Career Offender, pleaded guilty to one count of aggravated assault and two counts of aggravated burglary in exchange for

_____
[1]     Presiding Judge John Everett Williams passed away suddenly on September 2, 2022, and did not participate in this opinion. We acknowledge the many years of faithful service he provided to this court and the Tennessee Judiciary.

a sentence of 12 years for each conviction with a 60 percent release eligibility and dismissal of the remaining charges. The agreement provided for the trial court to determine both the alignment and the manner of service of the sentences.

The State offered the following summary of facts at the guilty plea submission hearing:

> Had this matter proceeded to trial, the State's witnesses are available and we believe the testimony would have been that, on December the 10th, 2018 between approximately 12:05 and 12:15, police were dispatched to 2019 Beach Avenue, Apartment B in regards to a burglary in progress. Ollie Petre, the resident, came home to find that his back door was kicked in and the [d]efendant was inside.
>
> When the [d]efendant saw Petre, he lifted a pint glass and told him to get out or he would kill him by hitting him in the head with the glass. Petre told . . . the [d]efendant that it was his home and he needed to leave. [The defendant] said he would kill Petre again and then fled the location. Petre lost sight of the defendant as he ran.
>
> Petre noticed that he was missing his Playstation and a video game after [the defendant] ran. Officers located the [d]efendant in an alley at Ninth Avenue South and Tenth Avenue South. Officers took Petre to the location for a show-up, and he positively ID'd the [d]efendant as the man that was in his residence. On the [d]efendant's person, officers located Petre's Playstation and game. Officers also located several items of jewelry that belonged to [the defendant's] neighbor, Rachel Anderson and Jeremy Anderson who lived at 2013 Beach Avenue, Apartment A. Property was returned to the victims.
>
> The [d]efendant also had on his finger Mr. Anderson's gold class championship ring. All of those events occurred in Davidson County. . . .

The prosecutor also explained that "for the record, the [d]efendant understands that, to get an alternative sentence at a sentencing hearing determined by Your Honor, he would have to qualify for the special needs provision."

At the December 3, 2021 sentencing hearing, Mr. Petre described coming home to find the defendant inside his residence and the defendant's threatening to kill him. He said that the time between the offenses and the hearing had "been an absolute living hell for me." Mr. Petre noted that although the physical property had been returned, he continued to suffer emotionally, particularly following the defendant's release "a few months ago."

Ashley Ray, a client advocate with the public defender's office, testified that she learned that the defendant had been exposed to a significant amount of violence as a child and that he had spent the bulk of his adulthood in confinement of some sort. She noted that the defendant's full scale IQ was 69, well below average, and "that he had some type of chromosomal abnormality." Ms. Ray said that following his release from prison, the defendant spent time in "recovery housing" and "mental health treatment." The defendant was diagnosed with post-traumatic stress disorder. She acknowledged, however, that the defendant exhibited "[s]ome resistance to treatment" because "he has a view about mental health treatment." Ms. Ray also acknowledged that the defendant had not relapsed into drug or alcohol use following his release.

The defendant expressed remorse for his actions against Mr. Petre and vowed that he "would never do that to nobody else or to him again." He apologized to Mr. Petre. The defendant denied being under the influence of drugs or alcohol at the time of the offenses, saying that he had consumed "one beer, and that was it." He said that he committed thefts in the past to pay for alcohol and drugs and for "living, having money to live on." The 52-year-old defendant testified that he had spent some 30 years in confinement as a result of his various felony convictions but that he had never participated in community corrections. He said that since his release in May 2021, he had worked at the Twelve Thirty Club as a "maintenance man" and that his job provided him with health insurance and a steady pay check. He attended AA meetings three times per week as permitted by his work schedule. He said that in his spare time he worked with Project Return to assist other former inmates acclimate to society.

During cross-examination, the defendant acknowledged that he was on parole when he committed the offenses in this case.

At the conclusion of the hearing, the trial court ordered the defendant to serve his 12-year sentences concurrently but denied his bid for community corrections under the special needs provision.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing

decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709. The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In this case, the defendant's 12-year sentence rendered him ineligible for probation. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less . . . . ."). Additionally, his conviction of aggravated assault rendered him generally ineligible for community corrections placement. *Id.* § 40-36-106(a)(1). Thus, to be considered for a community corrections placement, the defendant had to demonstrate eligibility via the "special needs" provision in Code section 40-36-106(c):

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under this chapter.

*Id.* § 40-36-106(c). Ms. Ray's testimony established that the defendant had at least some history of alcohol abuse and perhaps some mental health problems. No evidence, however, suggested that the defendant's specific needs were both "treatable" and best served "in the community rather than in a correctional institution." Additionally, the defendant's extensive record of criminal convictions and the fact that, by his own admission, he had relied on criminal activity as his primary source of income during those periods when he was not incarcerated suggested that he was not amenable to correction. The record also demonstrates that confinement was necessary to protect society from the defendant, whose record of criminal activity spanned nearly his entire adult life, and that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the

-4-

defendant," given that the defendant committed the offenses in this case while on parole. *Id.* § 40-35-103(1). Consequently, we cannot conclude that the trial court abused its discretion by denying alternative sentencing in this case.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE